WILSON *v.* STATE OF INDIANA.

[No. 30,546. Filed November 21, 1966.]

*C. W. H. Bangs,* of Huntington, for appellant.

*John J. Dillon,* Attorney General, and *David S. Wedding,* Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction of the appellant of murder in the second degree. Through a motion for a new trial, the appellant presents for our consideration whether or not the verdict of the jury was sustained by sufficient evidence and whether or not the court erred in the admission of certain exhibits portraying the scene of the murder, the victim, and clothing with blood stains on it.

This requires a brief review of the evidence which is, to a large extent, without contradiction. The offense charged took place in the Town of Warren, situated in Huntington County, having a population of approximately one thousand. At about 5:30 p.m. on June 18, 1963 the body of Lillie Good, an aged widow and mother of the president and director of the Exchange Bank of Warren, was found dead near the entrance of her home. She was lying in a pool of blood. She was last seen alive, so far as the evidence shows, about 2:30 p.m., when her cleaning woman left the premises. The home of the decedent was located about a block from Main Street and the Exchange Bank of Warren. It was situated beside the residence of her son, the president of the bank. Her body was discovered by the son, who called a doctor. A small bullet wound in the left side of the neck, from which blood had flowed, was found to be the cause of her death.

The evidence shows that the appellant, Randy K. Wilson, and two other persons, shortly after noon of the day in question, drove into Warren and parked a car, which was in the name the appellant's wife, in the area behind store build-

ings on Main Street. The appellant was in Warren for the purpose of selling or installing air conditioners. The evidence further shows that he was on leave from the military service in Germany and was to return by plane about 6:00 o'clock in the evening of that day. The appellant was age twenty-seven.

The evidence further shows that the town marshal, Jerry L. Wilson, made some investigation as to who owned the automobile which the appellant had driven into Warren. This investigation was made around 3:00 o'clock in the afternoon, at which time the marshall was unaware of any homicide occurring in the town. He took the appellant to the police station and jail. While there the appellant drew a gun, which was identified as a .22 caliber pistol (the same caliber as the one used to fire the shot that killed the widow Good in this case), and placed the town marshall and another party, Max Ellerman, who came into the Police station in a jail cell and locked them up. He took a .38 caliber gun from the marshall and thereafter used it to compel the town marshall and Mr. Ellerman to get into the car with him, and they drove to Huntington on some pretext. They later came back, and appellant again placed the town marshall and Mr. Ellerman in the jail. Then he left with a shotgun and a .38 caliber pistol and started across to a warehouse. By this time, apparently, the violent death of Mrs. Good had been discovered. The state police apprehended appellant after he had hidden in a rest room in the building. They discovered on the toilet there a case of shells and a .22 caliber Berretta pistol.

A ballistics expert testified that he fired this gun and took the bullet he had fired and examined it for markings, and he then compared it with a bullet found beside the body of the victim. The expert testified both bullets were fired from the same .22 caliber Berretta pistol. We may add that a shell was found in the jail which the appellant had ejected from the .22 caliber pistol, with hammer marks on it similar to hammer marks made on shells fired from the .22 Berretta pistol. The

evidence further shows that the appellant's clothing had blood on it, and this blood was analyzed by an expert who testified it was the same type blood as that of the victim. There was testimony that the appellant had no abrasions or wounds on him from which any blood of his would have discolored his clothing.

There was further testimony that a witness mowing a Methodist church yard across the street from the home of the widow, Lillie Good, saw a man dressed as the appellant was dressed on the day in question, enter the premises and go on the porch at approximately 2:30 p.m. on the day of the alleged crime. The identification of this individual is quite plain from the fact that it is stated he was wearing distinctive clothing with large lettering across the back which read "NATIONAL VAULT SERVICE." On the issue of insanity, medical experts testified that the appellant was sane. There was considerable evidence that the appellant was drinking intoxicating liquors on the afternoon of the date of the alleged crime.

On appeal, we cannot weigh the evidence. We can only reverse for insufficiency of evidence when there is no evidence of probative value to support the verdict of the jury. We find the evidence was sufficient to support the verdict of the jury.

The only other question remaining for consideration is that certain exhibits (pictures of the scene and the victim of the crime, and bloody clothing of the victim and the accused) were too gruesome for the jury to see, and therefore were prejudicial to the appellant. The pictures showed the victim as she was found immediately after the discovery of her death. It is true, they are gruesome and revolting, but they are certainly relevant to prove the crime, the corpus delicti, and the res gestae. If the scene had been cleaned up to make it less gruesome and less revolting, complaint could then have been made that it was not a true picture of what had happened and therefore was not competent. Leaving it as it is,

however, the argument is now made that it is too revolting and too gruesome.

The appellant also objected to the introduction in evidence of the blood-stained clothing of the deceased, as well as those of the appellant, because of their gruesome and inflammatory nature. They were relevant. The blood type in this case was a relevant matter for consideration of the jury. Certainly, blood stains on appellant's clothing were relevant. *Johnson* v. *State* (1929), 201 Ind. 264, 167 N. E. 2d 531.

The real issue in these cases of revolting or gruesome pictures and exhibits going before the jury is whether or not they *are relevant to the issues involved in the case*— not whether or not they are gruesome and revolting. The jury should have *all relevant evidence.* If it goes to prove an important issue in the case, it is admissible. As this Court has said previously, a murder trial is not a Sunday School picnic and cannot be turned into such. A trial of this character always involves matters that are not pleasant and are abhorrent to the natural feelings of individuals involved.

The only test for the admission of evidence in questions such as we have here is one of relevancy. The argument that such evidence is prejudicial has no validity, since all evidence introduced in a trial is introduced for the purpose of influencing the verdict of the jury or the triers of the facts. All evidence, if it influences the jury, is prejudicial to one side or the other. Hence, the mere objection that evidence is prejudicial is not a sufficient objection in itself. All evidence is relevant which throws or tends to throw any light on the guilt or innocence of the defendant or goes to aggravate or mitigate the crime, particularly when the jury has to fix the punishment. *Anderson* v. *State* (1933), 205 Ind. 607, 186 N. E. 316; *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930.

An accused, because he has allegedly committed a particularly vicious or horrible crime, has no constitutional rights to

keep such facts from the jury which is trying him. ■ All such evidence goes to the question of intent, premeditation, and even sanity. The burden of affixing the penalty rests upon the jury, and this principle cuts both ways. The defendant is entitled to have the jury hear not only evidence in aggravation but also in mitigation of the offense and the manner in which it was committed. *Blue* v. *State* (1946), 224 Ind. 394, 67 N. E. 2d 377; *Kistler* v. *State* (1876), 54 Ind. 400.

These principles are all set forth very clearly in the case of *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79, and are reaffirmed in the more recent case of *Marshall* v. *State* (1962), 242 Ind. 606, 610, 180 N. E. 2d 233, 235. Judge Achor said in the latter case:

> "Murder, by its very nature is a gruesome 'business.' One who takes the life of another human being cannot, with propriety, object to the full exposure of the wounds which he inflicted upon the body of his victim, merely because such evidence may tend to inflame the jury."

In between the above cases occurred the case of *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899, decided by a divided court, in which a third judge merely concurred ■ in the majority decision because the picture of the deceased showed the doctor performing an autopsy and the condition of the body had been changed. The *Kiefer* case is hemmed in and severely limited by the cases before and after it and has very little meaning, if any, as a precedent. It has no application here. The pictures here show no material alteration in the condition in which the deceased was found. We do not mean to say that in all cases, if a picture is taken of the body of a deceased victim, that it must be shown that the body was undisturbed, since there may be issues as to the direction which the bullet took through the body, or the position the victim was in or had to be in at the time the wound was inflicted. Relevancy, as we said before,

is the true test as to its admissibility—not the mere fact that it is revolting or gruesome.

For the reasons stated, we find no error presented by the appellant on appeal.

The judgment is affirmed.

Rakestraw, C. J., and Myers, J., concur. Jackson, J., concurs with opinion. Achor, J., not participating.

## CONCURRING OPINION

JACKSON, J.—As pointed out in previous opinions, concurring and majority, this Court does not weigh the evidence adduced in the trial court, nor does it seek to substitute its judgment for that of the court or jury trying the cause below. The court has consistently taken the position that it was the duty of this Court, on appeal, to examine the evidence to see whether or not there was sufficient evidence of probative value to sustain the judgment of the trial court.

In the case at bar the jury, after hearing the evidence, found the defendant guilty of murder in the second degree. Such determination was within their province and I concur in the result reached by the majority opinion.

I do not approve of the language of the majority opinion.

NOTE.—Reported in 221 N. E. 2d 347.