**Randy K. WILSON, Petitioner-Appellant,**

v.

**Russell E. LASH, Warden, Indiana State Prison, Respondent-Appellee.**

**No. 71–1010.**

United States Court of Appeals, Seventh Circuit.

Feb. 3, 1972.

Rehearing Denied April 7, 1972.

Joseph A. Marino, Glenn Dale, Md., for petitioner-appellant. Randy K. Wilson, Reg. No. 33254, pro se.

William F. Thompson, Asst. Atty. Gen., Theodore L. Sendak, Atty. Gen. of Indiana, Indianapolis, Ind., for respondent-appellee.

Before KILEY and FAIRCHILD, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

The district court dismissed petitioner Wilson's habeas corpus petition to set aside his conviction, by a jury, of a 1963 Indiana murder. Wilson has appealed. We affirm.

Wilson was tried, by a jury, in Huntington County, Indiana, for the murder

1. Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

of an old woman in Warren, Indiana. His retained attorney was Bangs, owner and publisher at the time of the Huntington News, published and circulated in the county. Wilson was convicted, and on appeal the Indiana Supreme Court affirmed. Wilson v. State, 247 Ind. 680, 221 N.E.2d 347. Bangs represented Wilson both at trial and on appeal in the Indiana courts.

This is the second time we have reviewed the dismissal of Wilson's habeas proceeding. The first time we reversed the judgment and remanded the cause for an evidentiary hearing. Wilson v. Phend, 417 F.2d 1197 (7th Cir. 1969). We thought Wilson's allegations, taken as true, were "clearly sufficient" to indicate constitutional violations in prejudicial publicity before and during the trial and in Bangs' conflict of interest in his dual role as attorney for Wilson and newspaper publisher. We ordered an inquiry into: (1) the extent and nature of the alleged prejudicial publicity; (2) the possibility of prejudice to Wilson from his retained trial attorney Bangs' alleged conflict of interest in serving as his attorney while publishing a newspaper in Huntington County, Indiana, where the trial was held; and (3) Bangs' alleged failure to produce exculpatory alibi witnesses and evidence of an automobile accident allegedly bearing on Wilson's innocence.

On remandment the district court appointed counsel for Wilson and conducted a hearing in excess of two days. The court adopted findings of fact contrary to Wilson's allegations and concluded that Wilson's trial was not prejudiced by publicity before or during trial either by Bangs' newspaper or other newspapers circulated in Huntington County; and that Bangs' conflict of interest did not violate Wilson's Sixth Amendment right to effective representation at the trial.

■ At the evidentiary hearing, Wilson had the burden of proving the allegations presented in the habeas petition. And inasmuch as a habeas action is a civil proceeding, we can set aside the district court findings only if they are clearly erroneous. F.R.C.P. 81(a)(2); 52(a); United States ex rel. Crump v. Sain, 295 F.2d 699, 701 (7th Cir. 1961). The record before us does not support Wilson's contention that the district court was required to hold that he was denied a fair trial and denied his Sixth Amendment right to effective representation. We think the district court findings are substantially supported by the record, are not clearly erroneous, and justify the court's conclusions.

## I. PREJUDICIAL PUBLICITY

■ The district court found that the newspaper articles reporting the murder from outside Huntington County and distributed within the county "were factually oriented, and could not be considered inflammatory or of such a nature as would tend to create prejudice in the minds of the reader." As to pre-trial publicity, the court found that it had not "whipped the public into such a frenzy that petitioner was adjudged guilty long before his trial," as Wilson alleged. As to publicity during the trial—against the ill effects of which Wilson alleged Bangs did not protect him—the court found that the jury, on Bangs' motion, had been sequestered prior to trial, completely cut off from the news media, and further ordered by the judge to read no news media coverage. The court further found a lack of proof that any of the twelve jurors could have been, or were, prejudiced or affected by any news account in any newspaper, magazine, radio or television program.

We have read the collection of pre-trial June newspaper clippings from several Indiana newspapers, including the Huntington Herald-Press, dominant Huntington County paper. The newspaper articles for the most part are no more nor less factual than could normally be expected when written contemporaneously with the "gruesome" murder of a respected old woman [2] in a small town

2. Wilson v. State, 247 Ind. 680, 221 N.E.2d 347, 349 (1966).

like Warren: headlines, stark photoghaphs including handcuffing of Wilson, and customary police statements. In our opinion the court could reasonably find that the late June 1963 publicity was not likely to have so prejudiced the Huntington County people from which the Wilson jury was selected the following October that the defendant could not have received a fair trial.

Bangs' own newspaper, the Huntington News, consisted of four to six pages with a circulation of a little over 300 in the county[3] of approximately 33,000 population. The record supports the district court findings. Only six articles about the murdered woman or Wilson appeared in the paper. Only four of these articles written while Bangs was Wilson's lawyer could have been seen by the jury. They comprised but fifteen "column inches," were short, non-inflammatory and related to facts calmly reported. The court was not compelled to find that the jury was prejudiced against Wilson because of the Huntington News publicity.

Finally, we see no merit in the argument that the district court was required to find prejudice per se in a pretrial report by Bangs' newspaper of a sheriff's comment that ballistics tests of Wilson's guns and blood on Wilson's pants "should tell them much;" and in a factual story that Wilson was an AWOL soldier.

## II. CONFLICT OF INTEREST

■ There is an appearance of prejudicial impropriety in Bangs' role serving conflicting interests: representing Wilson in the vital attorney-client relationship, and simultaneously publishing a newspaper in Huntington County. Normally an attorney—assuming a similar dual role in a gruesome murder trial

likely to create a hostile environment within a small community—would need heroic virtue to adhere steadfastly to the requisite neutral line between such conflicting interests. But we are unable to say that the district court was compelled to find the conflict of interest was per se so prejudicial to Wilson that his Sixth Amendment right was violated.[4] We think our discussion hereinafter (Part III) will show that the district court could reasonably find that Bangs was not ineffective in his representation of Wilson.

Bangs' role nonetheless was grossly inappropriate, even if not prejudicial, and we condemn the acceptance of the dual role as inimical to the interest of a sound and trustworthy administration of justice.

## III. BANGS' PERFORMANCE

■ A. The district court found (a) that by submitting the defense of "not guilty by reason of unsound mind" Bangs did not change Wilson's "not gui'ty plea" as Wilson alleged in his petition as part of his charge against Bangs;[5] and (b) that the added plea enabled Bangs to take whatever advantage he could from evidence of Wison's intoxication the day of the murder, and placed on the state the additional burden of proving Wilson's capacity for the crime. Finding (a) is correct, and (b) is reasonably supported by the record.

■ B. The court also reasonably found unpersuasive Wilson's uncorroborated testimony that a Mrs. Bonebrake could have testified—had Bangs been effective—that blood found on Wilson's pants when he was arrested came from victims of an automobile accident whom Wilson had helped the day of the murder. Mrs. Bonebrake was not subpoe-

---

3. At the habeas hearing, Bangs testified that the circulation of his paper approximated 500. In its findings the district court referred to the paper as being "distributed to not more than 300 patrons in the county." No challenge has been made of the discrepancy, if any.

4. Effective Assistance of Counsel, 14 S.D. L.Rev. 287, 296 (1969).

5. *Id.* at 297–299.

naed prior to the trial, even though she was available and Wilson knew her address. Bangs testified that Wilson never told him of Mrs. Bonebrake or the accident. And a witness for Wilson testified that he had interviewed Mrs. Bonebrake prior to the habeas hearing but that she had refused to sign an affidavit in behalf of Wilson.

C. The district court found that in preparing for the trial Bangs had pursued all leads given him by Wilson with respect to his claim of helping accident victims, and by his family and friends, obtaining alibi witnesses—all in futile efforts to develop a defense for Wilson. The record supports that finding. And Wilson's testimony of proffered help from friends of his in Germany was nebulous.

Bangs did not withhold information from Wilson about his ownership of the Huntington News. Wilson's father retained Bangs, and knew at the time of that ownership. At no time before, during or after trial did Wilson complain about Bangs' conduct as attorney at the trial or on appeal. And at the habeas hearing the Indiana trial judge testified that Bangs' defense of Wilson was "very good," "better than average" in the community. And the evidentiary hearing disclosed nothing whatever to support a claim that Bangs' performance on appeal was ineffective.

## IV. PROCEDURAL RULINGS

We are not persuaded by Wilson's argument that the district court's procedural rulings during the habeas evidentiary hearing prevented him from developing additional evidence in support of his request for a new trial. And we see no abuse of the court's discretion in denying Wilson's motion to amend his petition. The proffered amendment covered irrelevant matters, or matters already in evidence, or questions already raised in the habeas proceeding. Nor do we see abuse of discretion in excluding letters and oral testimony allegedly reflecting adversely upon Bangs' representation of Wilson in the Indiana appeal.

The pertinence of the testimony was marginal.

We see no error or abuse of discretion either in the court's denying leave to Wilson—a week after the taking of evidence was concluded—to take the deposition of Mrs. Bonebrake and depositions of radio and television station employees in the Huntington County area; and in denying his motion for a transcript of the habeas proceeding, not for purposes of appeal, but "to decide the issues."

We conclude that the district court took special care to see that the further proceedings were faithful to this court's mandate, and provided Wilson sufficient opportunity to enable him to prove, if he could, what he alleged.

For the reasons given, the judgment is affirmed.