SHIRLEY BLEVINS *v.* STATE OF INDIANA.

[No. 1271S382. Filed January 8, 1973.]

*Phillip W. Brown,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by grand jury indictment with first degree murder in Wayne County. The indictment also charged Kenneth Francis as a co-defendant. Venue was changed to Shelby County. The Honorable George J. Lewis was selected as special judge. Both defendants filed motions for separate trials, which were granted. Trial of the appellant by jury resulted in a finding of guilty of first degree murder, following which he was sentenced to life imprisonment at the Indiana State Prison.

The record discloses the following facts:

On June 1, 1970, the appellant, Shirley Blevins, Kenneth Francis and two sisters, Eva Joyce McGuire and Flora Click, along with the children of the women, drove from Cloverbottom, Kentucky, to Richmond, Indiana, in a black Mustang automobile that had originally been black over yellow but had been painted all black prior to the trip. Both the ignition and trunk locks had been punched out and part of the name "Mustang" on the side of the car was broken so that it could be moved. On Saturday, June 6, 1970, the appellant and Francis left the women and children in an apartment in Richmond and drove away in the Mustang.

At about 11:47 P.M. on June 6 the dispatcher at the Wayne County Sheriff's Department received a radio call from Donald Goodwin, Town Marshal of Fountain City, Indiana, requesting a vehicle check on an automobile bearing a 1970 Kentucky license No. B23-902. This license plate was found to have been issued to Flora Click for a 1960 Opel station wagon. Flora Click later testified the Mustang in which they drove from Kentucky had a Fayette County, Kentucky, license on it, and that the Fayette County plate was missing on her 1960 Opel station wagon.

Following the radio communication from Marshal Goodwin to the Wayne County Sheriff's Department, witnesses observed Goodwin and his deputy in the lot of Miller's Sunoco Station at the intersection of Highway 27 and South Street in Fountain City. In addition to the marshal's car a black Mustang, fitting the description of the car driven by Blevins and Francis, was parked in the lot. Witnesses passing the service station at approximately 2:15 A.M. on June 7, 1970, testified that they saw unidentified persons in the lot near the cars, and that one person was being searched by another. At 2:20 A.M. a number of pistol shots were heard and a witness saw the taillights of a Mustang leaving the lot.

Upon investigating the shots witnesses found Marshal Goodwin and his deputy shot to death. Marshal Goodwin

was slumped in the front seat of his patrol car, and his deputy lay on the ground nearby.

Under the marshal's body a clipboard with a pad attached was found. On the top page of the pad was the following notation:

Ky.—70 B23-902
Kenney C. Francis
185 Broadway
Irvin, Ky.
T.V., Radio-Iron

An autopsy revealed that Marshal Goodwin had been shot with a .38 caliber weapon. An autopsy revealed that Deputy Peters was shot with a .22 caliber weapon. Later the same day it was discovered that the home of the Hinshaws located near the station had been burglarized. Missing from the house were a TV, an iron, a glove, a hunting knife and a pistol. The pistol taken in the burglary was found between Marshal Goodwin's legs and bore the fingerprints of Kenney Francis. That afternoon a burned out Mustang automobile was found a few miles north of Fountain City. The original colors and repainting, the punched out ignition and trunk locks and the broken word "Mustang" matched the description of the car the appellant and his companion had been driving. In and around the charred remains of the car were found an iron, a glove and remains of a TV set, all of which were identified as coming from the burglarized home. At about 3:00 A.M., immediately after the shooting, a blue 1969 Dodge automobile was stolen from a home near the place where the burned Mustang was found. At about 4:00 A.M. Blevins and Francis returned to their apartment in Richmond driving a blue Dodge. The two men, the women and the children left immediately to return to Kentucky.

Mrs. McGuire testified that after hearing a radio broadcast concerning the shooting she questioned the Appellant Blevins, and he stated that he had shot Marshal Goodwin as

Goodwin was trying to arrest him. A few minutes later he denied the shooting.

In the afternoon of June 7, 1970, Kentucky State Police saw a blue Dodge bearing an Indiana license plate with the same number as on the stolen car. A chase ensued resulting in an abandonment of the Dodge and appellant and Francis escaping on foot into a woods. In the car police found the hunting knife stolen from Hinshaws and a Fayette County, Kentucky, license plate No. B23-902.

On June 19, 1970, the appellant and Francis had made their way to Orlando, Florida, where they asked friends to pawn two pistols for them, Blevins' pistol being a .38 and Francis' a .22. The FBI subsequently recovered these pistols and ballistic tests established that the .38 pistol which was pawned for the appellant had fired the bullet that killed Marshal Goodwin.

Appellant first argues that the trial court erred in overruling his motion for a continuance. The record shows that appellant made a motion that the names and addresses of the State's witnesses be furnished, which motion was granted. The prosecuting attorney furnished such a list. On the first day of the trial the prosecutor presented a second list to the appellant which differed from the first list in that four names had been deleted and twelve names had been added. The appellant moved for a continuance in order to interview the additional witnesses or in the alternative that the State be confined to the witnesses on the first list. This motion was denied. After the selection of a jury and before any evidence was introduced, the trial court granted a continuance to allow defense counsel to interview the additional witnesses.

There is no claim in this appeal that the time so allowed by the trial court was insufficient. The matter of granting a continuance is generally in the sound discretion of the trial court. This Court will not reverse unless there is a clear showing of an abuse of such discretion. *Jay*

*et al.* v. *State* (1965), 246 Ind. 534, 206 N. E. 2d 128, 5 Ind. Dec. 231. In the case at bar we see no abuse of discretion in that the trial court did grant a continuance before any evidence was admitted, and there is no claim that the continuance was not sufficient.

Appellant next claims the trial court erred in overruling his motion for a continuance when a regularly impaneled juror became ill during the trial. During the trial ■ Betty Elmore, one of the regular jurors, suffered an asthmatic attack. The trial court made no inquiry as to how long the juror would be absent but immediately ordered her replaced by the first alternate juror. IND. RULES OF PROC. Rule TR. 47(B) provides that alternate jurors may "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." The rule does not require the trial judge to conduct a hearing to determine incompetency or to determine the probable length of absence of the juror in question. It is sufficient under the rule when the situation arises for the trial judge to immediately replace the questioned juror with an alternate, if one has been provided. See *Smith, Peak* v. *State* (1960), 241 Ind. 311, 170 N. E. 2d 794.

Appellant next claims the trial court erred in admitting State's Exhibit No. 21 into evidence over his objections. State's Exhibit 21 is a photograph of the body of Marshal Goodwin on the autopsy table with a probe protruding from the bullet wound in his head. It is appellant's contention that this photograph was posed and unduly gruesome. In support of his position he cites *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N. E. 2d 899. In the *Kiefer* case, several photographs of the decedent were permitted in evidence. There were only a few of these photographs which were held to be too gruesome and of no evidentiary value and thus inadmissible. In *Wilson* v. *State* (1966), 247 Ind. 680, 221 N. E. 2d 347, 9 Ind. Dec. 401, Chief Justice Arterburn speaking for this Court observed that the *Kiefer* case was severely limited by cases both before

and after that decision. In *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76, 17 Ind. Dec. 296, Justice Hunter speaking for this Court again observed the narrow limitations of the *Kiefer* case in holding that pictures showing probes protruding from bullet wounds were properly admitted to demonstrate the testimony as to the angle at which the bullets entered the body. Such is the situation in the case at bar.

As we observed in *Schmidt* v. *State* (1970), 255 Ind. 443, 265 N. E. 2d 219, 24 Ind. Dec. 164, one can hardly expect photographs of this nature to be anything but gruesome. However, when these photographs are demonstrative of evidence being presented by witnesses, they are admissible regardless of their gruesome nature.

Justice DeBruler speaking for this Court observed in *New* v. *State* (1970), 254 Ind. 307, 259 N. E. 2d 696, 21 Ind. Dec. 720, that a photograph showing an unidentified person holding up the arm of the decedent in order to expose wounds was admissible.

Charles C. Scott in his work on PHOTOGRAPHIC EVIDENCE makes the following statement, which is in keeping with the above authorities:

> "Sticks or probes may be inserted in a wound to open it up for the purpose of the photograph, and if a wound is covered by hair, the hair may be pushed back so that the wound will show in the pictures, or the hair may be shaved before the subject is photographed as this helps the viewer ascertain the size, type and location of the lacerations. Attention may be drawn to bullet holes and other injuries by encircling them with paint or some other substance that will adhere to the skin." 3 C. Scott, PHOTOGRAPHIC EVIDENCE § 1226 (2d ed. 1969) (footnotes omitted).

Appellant next claims the trial court erred in admitting over his objections State's Exhibits 18, 27, 28, 29, 30, 31, 32, 33, 34 and 36.

State's Exhibits 18, 30, 31, 34 and 36 are photographs of a burned out Mustang automobile.

State's Exhibit No. 27 is the .22 caliber pistol found in the marshal's lap when his body was discovered.

Exhibit 28 is the cartridge clip from that pistol.

State's Exhibit 29 is a righthanded leather glove found in the burglarized residence at Fountain City, and Exhibit 32 is a matching lefthanded leather glove found near the burned out Mustang automobile.

Exhibits 33 and 34 are an iron found near the burned out Mustang and a TV chassis found in the burned out trunk of the car. The gloves, the iron, the TV, and the pistol and its clip were all identified by the owners of the burglarized home as being theirs. This was certainly evidence which the jury could consider in determining whether there was a connection between the burned out Mustang, the burglarized home in Fountain City and the appellant.

As this Court stated in *Wilson* v. *State* (1966), 247 Ind. 680, 684, 221 N. E. 2d 347, 9 Ind. Dec. 401:

> "All evidence is relevant which throws or tends to throw any light on the guilt or innocence of the defendant. . . ."

Appellant takes the position that these exhibits only tend to show his participation in another crime and are not directly connected with the charge of murder. In support of this position he cites *Loveless* v. *State* (1960), 240 Ind. 534, 166 N. E. 2d 864. In the *Loveless* case this Court reversed a conviction for second degree burglary because evidence of other unconnected burglaries had been admitted.

We see no connection between the case at bar and the *Loveless* case. In the case at bar there was evidence before the jury that the burglarizing of the Hinshaw home in Fountain City had been perpetrated by the appellant and his companion, and that police officers had been killed by the appellant and his companion in their effort to avoid

arrest for that burglary, that they had further sought to escape detection by burning the escape car and some of the items taken in the burglary.

We, therefore, hold the admission of all of the above numbered exhibits was proper.

Appellant next claims the trial court erred in admitting State's Exhibit 43 into evidence.

Exhibit 43 was a clipboard containing the notations above mentioned in this opinion, which had been found under the body of Marshal Goodwin. One might easily surmise the notes found on the pad attached to the clipboard were made by Marshal Goodwin. However, the authorship of those notes was not established. Had it been established that Marshal Goodwin had in fact made those notes, they undoubtedly would have been admissible as a part of the *res gestae*. See *Rowe* v. *State* (1968), 250 Ind. 547, 237 N. E. 2d 576, 14 Ind. Dec. 516. In the absence of such identification, the trial court should have excluded Exhibit 43. However, we find that the error committed by the admission of Exhibit 43 was harmless error and does not call for a reversal of this case. The contents of the notations found on the pad in question were all fully established by other competent evidence in this case. There was nothing on the pad which was any more than cumulative to other evidence received in this case. The admission of State's Exhibit 43 was, therefore, harmless. See *Adams* v. *State* (1946), 224 Ind. 472, 69 N. E. 2d 21.

Appellant next contends the trial court erred in admitting State's Exhibits 63, 64, 65 and 66.

Exhibit 63 was a Bill of Sale for the television found in the trunk of the Mustang.

Exhibit 64 was an invoice from the supplier for the television sold to Mr. Hinshaw.

Exhibit 65 was an invoice showing the serial number of the same television set.

Exhibit 66 was a warranty card on the television which had been filled out by the dealer.

Appellant argues that the State failed to conform with the rules of exception to the hearsay rule in that it failed to show that the witness was unable to recall the facts shown ■ by the exhibits. It is true the record shows that the witness had not said at the time the exhibits were offered that he could not recall their contents. However, the witness was later recalled to the stand and did so testify. Thus, the State did in fact establish that the witness could not testify from his own memory as to the facts contained on the exhibits. There was, therefore, no error in permitting the exhibits to be introduced in evidence. *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865, 22 Ind. Dec. 573.

Appellant next claims the trial court erred in admitting State's Exhibit 68.

State's Exhibit 68 was a FBI fingerprint card containing the fingerprints of Kenney Francis taken on July 7, 1970. Appellant argues that this card showing Francis' finger- ■ prints was hearsay, irrelevant, immaterial and of no probative value with regard to the crime charged against appellant. The evidence shows and appellant admits that these fingerprints were to be used for comparison with fingerprints found at the scene of the shooting and at the burglarized home. In the case at bar the presence of Francis at the scene of the shooting was properly submitted to the jury to corroborate other evidence that the appellant was present and participated in the crime. The jury had heard evidence that the appellant and Francis came to Indiana together, stayed together after arriving in Indiana, left their apartments together shortly before the crime charged and re- turned together shortly after the crime, driving an automobile which had been stolen near the burned out and abandoned Mustang. Evidence of Francis' presence at the scene of the

shooting also corroberates appellant's admission of guilt made to Mrs. McGuire. See *Wilson* v. *State, supra.*

Appellant also argues that this evidence was hearsay as to him because Blevins was not present when the fingerprints were taken. We do not agree with appellant's position. As is said in 21 AM. JUR. 2d *Criminal Law* § 341 (1965) :

> "The proof of facts by a document or a duly authenticated copy thereof is not objectionable as violative of the right to be confronted by witnesses. One of the exceptions to the face-to-face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution. Accordingly, an accused's right to confront witnesses is not violated by comparison of a homicide victim's fingerprints with those of an ex-soldier produced from War Department service records, or by the admission of copies of fingerprints, certified by wardens of penitentiaries in sister states where the defendant has been confined, in proof of defendant's identity." (Footnotes omitted.)

We, therefore, hold the trial court did not err in admitting State's Exhibit 68.

Appellant next claims the trial court erred in admitting into evidence State's Exhibits 69 and 70. These exhibits were enlargements of fingerprints taken from the stolen pistol found in the marshal's lap and from those found at the scene of the burglary. After these exhibits had been admitted and testimony heard concerning their identity, the appellant moved that they be stricken and the jury instructed to disregard them on the ground that they were irrelevant, immaterial and of no probative value and hearsay as to the appellant. This motion was sustained.

The appellant then moved for a mistrial on the ground that much damaging evidence had been received over his objections concerning exhibits which the court had ruled should be stricken. The court overruled the motion for mistrial.

It is our observation that the trial court was in error when he sustained the motion to strike Exhibits 69 and 70. As previously pointed out concerning Exhibit 68, these exhibits constituted part of the evidence which was properly submitted to the jury as to the presence of Kenney Francis at the scene of the crime. This evidence, coupled with evidence that Francis and the appellant were in each other's company both immediately prior to and immediately after the commission of the crime, and that they worked in concert burning an automobile and stealing another in an attempt to avoid detection and effect their escape, was competent to complete the overall web of evidence from which the jury could determine that the appellant was in fact involved in the commission of the crime. *Medsker* v. *State* (1968), 249 Ind. 369, 232 N. E. 2d 869, 12 Ind. Dec. 513.

We, therefore, hold the trial court did not err in admitting State's Exhibits 69 and 70 into evidence and did not err in denying appellant's motion for mistrial after striking Exhibits 69 and 70.

Appellant cites *Baniszewski* v. *State* (1970), 256 Ind. 1, 261 N. E. 2d 359, 22 Ind. Dec. 482, for the proposition that since the appellant and Francis had been granted separate trials the evidence concerning Francis' guilt should have been excluded. With this we cannot agree. The *Baniszewski* case stands for the proposition that when there are admissions made by one co-defendant the other co-defendant is entitled to a separate trial. This does not mean that all evidence involving a co-defendant must be excluded in a separate trial, when that evidence also circumstantially ties the defendant at trial to the crime. Where, as here, appellant and his co-defendant were engaged in a common criminal enterprise, the act of one is admissible against the other. Evidence admitted showing Francis' participation was proper. 22A C.J.S. *Criminal Law* § 774.

Appellant lastly contends that the trial court erred in refusing his tendered Instructions 15, 19 and 20.

Appellant's tendered Instruction No. 15 reads as follows:

"The Court instructs you that, when the State of Indiana relies on circumstantial evidence in order to secure a conviction, if any one fact necessary to a conclusion of guilt is wholly inconsistent with the hypothesis of guilt of the accused, it breaks the chain of circumstantial evidence upon which the inference of guilt of the accused depends; and, however plausible or apparently conclusive the other circumstances may be the charge must fail and you must find the defendant not guilty."

The court did give the following instruction to the jury:

"Evidence may be either direct or circumstantial. Direct evidence is evidence of a particular fact or circumstance which forms the subject of judicial investigation. Circumstantial evidence is evidence of other or collateral facts and circumstances from which the particular fact, which forms the subject of judicial investigation, is or may be legitimately inferred.

"To justify a conviction of the defendant in this case, on circumstantial evidence, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis except that of the defendant's guilt. If the circumstances disclosed by the evidence can be explained on any reasonable theory consistent with the defendant's innocence, he is entitled to an acquittal. But circumstantial evidence alone is sufficient to support a verdict of guilty of any crime, provided the Jury believes beyond a reasonable doubt, from the evidence given in the case, that the accused is guilty as charged.

"No greater degree of certainty is required where the evidence is circumstantial and where it is direct, for, in either case, the Jury must be convinced beyond a reasonable doubt, of the defendant's guilt as charged."

It is not error to refuse a tendered instruction, the substance of which is adequately covered by other instructions which are given. *Sargeant v. State* (1970), 255 Ind. 252, 263 N. E. 2d 525, 23 Ind. Dec. 444.

Appellant's tendered Instruction No. 19 reads as follows:

"The Court submits to you various forms of verdict, one of which may be used by you when you reach a conclusion in this case. But the Court further instructs you that you must not infer that the Court, by these forms of verdict or the number or any other matter connected therewith, suggests to you in any manner or form what your verdict should be. That is solely for the Jury, and the Court has no right to and has no intention of making any suggestion in that regard."

The court did give the following instruction:

"The Court has not intended and does not now intend by his rulings or comments or by his instructions to indicate to you any opinion as to the facts in the case, or that he has any opinion as to what facts are proven or not proven by the evidence. The facts must be determined by the jury from the evidence, and when so determined, it is the duty of the jury to apply the law as they determine it to be and return a verdict in accordance with the law and facts as ascertained."

It is not error to refuse to give Instruction 19 for the same reason as stated above. *Sargeant* v. *State, supra.*

Appellant's tendered Instruction 20 reads as follows:

"In the trial of a civil case, the law has been complied with when the juror, passing upon the evidence, acts conscientiously and upon a basis which the judgment approves. All men who do right and act justly, act in obedience to judgment and conscience. Good men do this in the everyday business of life. But a higher requirement is imposed before the defendant, Shirley Blevins, can be found guilty. In this case, as in any prosecution for an alleged crime, there must not only be a conscientious belief of guilt, but there must be a conscientious conviction that there is no reasonable doubt of guilt. Jurors might conscientiously believe an accused person to be guilty and yet not be convinced to that degree of certainty which the law requires."

The court gave the following instruction covering the same subject:

"To prove a proposition beyond a reasonable doubt, the evidence must be such that it would convince a prudent man of the truth of it to such a degree of certainty that he would feel safe to act upon such conviction without hesitation in matters of the highest importance to his own personal interest, under circumstances where there was no compulsion resting upon him to act at all. If the defendant in this case has not been proven guilty by the evidence to the degree of certainty I have just stated, you would not be warranted in finding him guilty."

The court, therefore, did not err in refusing to give the appellant's tendered Instruction 20. *Sargeant* v. *State, supra.*

We find no reversible error in this case. The trial court is, therefore, affirmed.

Arterburn, C.J., DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 291 N. E. 2d 84.