JOHN KRAMER *v.* STATE OF INDIANA.

[No. 1-1273A209. Filed October 7, 1974. Rehearing denied November 13, 1974. Transfer denied April 1, 1975.]

*Tommy L. Strunk, McDonald & Strunk,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

ROBERTSON, P.J.—Kramer, the defendant-appellant, is appealing his conviction for the sale of dangerous drugs.

The several issues raised by Kramer may be summarized as:

1. Whether the trial court erred in allowing the State to make an offer to prove in the jury's presence;

2. Whether an adequate chain of custody was proven for a State's exhibit of marijuana;

3. Whether a letter written to Kramer was improperly introduced by the State and admitted into evidence by the trial court;

4. Whether the trial court erred in overruling a motion

to suppress evidence obtained in a search of Kramer's automobile; and

5. Whether Kramer was entrapped.

The facts favorable to the State may be summarized as showing that one evening a police undercover agent went to the residence of Joe Hasecuster and while there smoked marijuana cigarettes. The next evening the undercover agent was searched by the police and then given money to make a drug buy from Hasecuster. The agent testified at the trial that she asked Hasecuster if he had anything for sale. His reply was that he did not, but Kramer did. She then asked Kramer about buying some marijuana. He indicated he had some and left the residence. Upon his return the agent accompanied him to his car where the sale took place. The agent then met with police officers, who had her under surveillance, and gave them the marijuana.

(Prior to a discussion of the relative merits of the issues it should be noted that a failure to comply with Indiana Rules of Appellate Procedure 7.2(A)(3)(a), in that there are no marginal notations of the almost 700 page transcript, has encumbered the consideration of this appeal and contributed, in part, to some confusion regarding the facts.)

Kramer first argues that the trial court erred in allowing the prosecution to make an offer of proof in the jury's presence.

The sequence of events shows that while the prosecutor was examining one of his police officer witnesses Kramer's counsel raised a hearsay objection to a question. Kramer's counsel then called for an offer of proof by the State. The trial judge allowed further questioning by the prosecutor to determine if the sought after answer was of the witness's own knowledge. Kramer's counsel, after several questions were answered by the witness, moved that the offer to prove be made outside of the jury's presence. The trial court overruled the motion.

An offer of proof is defined as:

"On direct examination, if a question is asked, an objection made by the adverse party, and the trial court sustains the objections, the examining party can preserve any error in sustaining the objection only if the examining party makes an offer of proof. In the offer of proof, counsel for the examining party states the facts about which he expects that the witness would testify, if permitted to answer the question.

The sole purpose of the offer of proof is to preserve any error in sustaining an evidence objection and to make a record, in the event the case is appealed." (Footnotes omitted.) Ind. St. Bar Ass'n Handbook on Evidence, pp. 23-24. (1961)

Under traditional concepts there was no offer of proof involved in the instant case.

Instead, Kramer complains of an inquiry as to admissibility of evidence. As such, it is largely within the trial court's discretion as to what the jury hears. C.J.S. Crim. Law Vol. 23 § 1027(a), pp. 1111-12. We are of the opinion that what the jury heard did not constitute reversible error.

The second major issue Kramer argues is the fact that a bag of marijuana was held in the Indiana State Police Laboratory for a period of thirteen months with as many as six to eight State Police personnel having access to the exhibit. As such, Kramer alleges the chain of custody was not adequate because there existed "too great an opportunity for the evidence to have been tampered with."

The rule regarding the chain of custody of drugs has been held to be:

". . . where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics. Where such evidence or testimony is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed." *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, at 656.

It has also been held that the State need not prove an absolutely perfect chain of custody (*Guthrie* v. *State* [1970], 254 356, 260 N.E.2d 579) and a mere possibility of tampering will not make evidence objectionable (*McMinoway* v. *State* [1973], 260 Ind. 241, 294 N.E. 2d. 803).

We are of the opinion that Kramer's specific contention was answered in *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541. There, as here, a question was raised about the accessability to exhibits in the State Police Laboratory. The Indiana Supreme Court held that the chain of custody was established because, "There is an explanation of presence of the exhibit for each day in question." Because the presence of the exhibit in the instant case was accounted for, and since there is no evidence or inference that the exhibit was tampered with, we determine that there was an adequate chain of custody.

Kramer's third issue concerns the overruling of his motion in limine. The motion sought to foreclose any mention of a letter written to Kramer by a Steve Hotel. The letter, an offer to sell marijuana, was subsequently admitted as an exhibit.

We understand Kramer's argument to be that the letter was an "evidentiary harpoon" discovered subsequent to his arrest, therefore irrelevant to show probable cause in negation of his allegation of entrapment.

We cannot agree that the letter was an "evidentiary harpoon".

"'An evidentiary harpoon', [is] where the prosecution through its witnesses successfully places evidence before the jury which is improper, such as previous arrests and convictions of the defendant, in situations where such evidence would not be admissible." *Grimes* v. *State* (1972), 258 Ind. 257, 280 N.E.2d 575.

We believe that Kramer's argument reduces itself to an inquiry into relevancy. As stated in *Grimes, supra:*

"All evidence is relevant which throws, or tends to throw, any light upon the guilt or innocence of the defendant." 280 N.E.2d 579.

Evidence tending to show a defendant's knowledge of a source and the price of marijuana is relevant to some degree to a charge of selling marijuana.

Kramer further urges that the letter was hearsay. We again disagree because the purpose of the letter was not to prove the truth of its contents, but to show Kramer's knowledge of cost and availability of marijuana. See *Blue* v. *Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269.

Kramer also argues that the letter was not properly authenticated prior to its admission.

A portion of the testimony that tends to negate this argument shows that Kramer was asked:

"Q. Ever receive any letters from [Hotel]?
A. Yes.
     MR. STRUNK: Objection, your Honor. Goes back to my Motion in Limine.
     COURT: Objection overruled.
Q. When was that?
A. I don't remember. Cause I got the letter and I read it. Tell you the truth I didn't know what happened to it. Cause it didn't mean nothing to me. I didn't know what happened to it. Cause it didn't mean nothing to me. I didn't know—I didn't even know it was in my car to tell you the truth".

Because the letter was not the basis of the prosecution and because of the absence of any evidence indicating the letter was fraudulent, we are of the opinion that authentication was sufficient under the facts of the case.

Kramer's next argument relates to the overruling of his motion to suppress. Kramer sought to exclude introduction into evidence of some greenish plant-like substance and the aforementioned letter found as a result of a search, pursuant to a warrant, of his automobile. The greenish material was not introduced at the trial, however, the letter was.

Kramer's several arguments about the validity of the search warrant could be meritorious were it not for the fact that we view the introduction of the letter as harmless error insofar as this issue is concerned. As was stated in *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860:

"If the introduction of inadmissible evidence made no contribution to the verdict, then the constitutional error is harmless. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, rehearing denied 386 U.S. 987, 87 S.Ct. 1726, 23 L.Ed.2d 284. In Indiana, it is well settled that the introduction of otherwise inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *See Grimes* v. *State* (1972), [258] Ind. [257], 280 N.E.2d 575; *Jackson* v. *State* (1971), [257] Ind. [589], 275 N.E.2d 538." 287 N.E. 2d at 863.

Although the letter had some degree of relevancy we are of the opinion that other evidence of the sales transaction was sufficient proof of guilt adequate to sustain the conviction, and rendering the letter indecisive as far as Kramer's guilt or innocence is concerned.

Kramer's final argument, alleging entrapment, is based upon two grounds: one, that the police had no cause to suspect him of any illegal activity before the buy was attempted; two, that he was induced to commit a crime that he had no predisposition to commit.

As explained by Judge Lybrook in *Hauk* v. *State* (1974); 160 Ind. App. 390, 312 N.E.2d 92, Indiana adheres to the subjective approach to entrapment which focuses on the intent or predisposition of the defendant to commit the crime. A defendant having the predisposition may not complain of entrapment if the police or their agents merely create an opportunity for the commission of the crime and the defendant takes advantage of the opportunity.

Once the defendant has raised the defense of entrapment, Indiana law imposes an additional burden on the State for

the protection of the defendant. The State must prove that it had probable cause to suspect that defendant was engaged in illegal conduct before it set into operation its scheme to trap him. *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641, *Hauk* v. *State, supra.*

However, it is not necessary for the police to have had the information leading to probable cause prior to beginning investigations.

"It is sufficient if during the investigation but before the transaction which is alleged to be entrapment the officers acquire the information which supplies probable cause." *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641, 645.

In the present case, after beginning her investigation but before the sale, the informer was told by Joe Hasecuster, the original suspect, that Kramer would sell marijuana. This was sufficient probable cause to justify the informer's solicitation of Kramer.

Whether Kramer had the predisposition to commit the crime and whether he was entrapped are questions of fact for the jury. *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724; *Smith* v. *State, supra; Hauk* v. *State, supra.* In reviewing the jury's determination, we look only to that evidence most favorable to the State with all reasonable inferences therefrom. If substantial evidence of probative value supports that determination, we must accept it.

The informer testified that she asked Kramer if he had any marijuana for sale and he answered affirmatively. She then waited while Kramer left to get the marijuana. When he returned, she accompanied him to his vehicle where the sale took place.

In our opinion this was ample evidence upon which the jury could find that Kramer had the predisposition to engage in this criminal activity and that the informer merely afforded him the opportunity to offer to sell the marijuana.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 317 N.E.2d 203.