**Billy ASHLEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 784S261.

Supreme Court of Indiana.

June 6, 1986.

William Janes, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Billy Ashley was convicted after a trial by jury of theft, a class D felony, Ind. Code § 35–43–4–2 (Burns 1979 Repl.), and robbery, a class B felony, Ind. Code § 35–42–5–1 (Burns 1979 Repl.), and was found to be an habitual offender, Ind. Code § 35–50–2–8 (Burns 1979 Repl.). The trial judge sentenced Ashley to a term of twenty years imprisonment for the robbery, which was enhanced by thirty years by virtue of the habitual offender finding. The judge imposed a concurrent four-year sentence for the theft.

In this direct appeal, Ashley raises five issues:

1) Whether the State should have been foreclosed from presenting evidence that Ashley was at a place and time other than that stated in his alibi notice because it failed to respond to his alibi notice;

2) Whether the trial court erred in refusing to rearraign Ashley on an amended habitual offender charge;

3) Whether the trial court erred in admitting into evidence a briefcase and the documents contained in it;

4) Whether testimony concerning the content of a telephone call was admitted without an adequate foundation, and

5) Whether the trial court erred in admitting into evidence "mug shots" of Ashley and another individual.

We affirm.

These are the facts which support the judgment of the trial court. On the morning of June 8, 1982, two men and a woman entered a used car lot owned by Joe Burgess, located in Michigan City. Salesman

Corky Walter approached the two men, one of whom identified himself as Carl Edmonds. The other man, who did not identify himself, expressed interest in purchasing the 1975 Cadillac which Edmonds had inspected a week earlier. After a brief discussion, the prospective buyer indicated that he was expecting an insurance check with which he would buy the vehicle. It was agreed that he would test drive the Cadillac and, while doing so, pick up the insurance check if it was available. Walter provided the keys, and the man and woman left in the Cadillac. Edmonds remained at the car lot.

Some time later, Walter received a telephone call explaining the delay in returning the vehicle. When Walter later received a second call offering similar explanations, he became suspicious and went to consult his boss. When he returned, Edmonds was gone.

Later that same day, Nancy Erikson was tending her family store, Erikson Jewelers, when a couple entered the store. The man indicated that he wished to purchase a gift for his mother. While Erikson made gift suggestions, her attention was drawn to the woman, who was removing items from display cases. When she turned back to the man, he pointed a gun at her and demanded the jewelry. Erikson complied, and emptied several display cases in the course of approximately fifteen minutes. The man continued to hold the gun on Erikson until the couple left.

Although Erikson pursued the couple into the parking lot, they had disappeared, and she was unable to observe the vehicle involved. When the police arrived, she identified Ashley from a photographic array. She later identified a more recent photograph of Ashley from a second array.

On June 16, 1982, a 1975 Cadillac was found abandoned in Racine, Wisconsin. The vehicle was traced through its serial number to Burgess Motors. When the car was returned, Walter, Burgess, and his son Steve opened the trunk and discovered a brief case containing documents bearing the name "Billy Ashley". They immediate-ly contacted the police, who took custody of the brief case and its contents.

At trial, the brief case and its contents were admitted into evidence. Both Walter and Erikson identified Ashley as the perpetrator of the car theft and the jewel robbery. Though he had earlier filed a notice of alibi, Ashley did not present any evidence.

### I. State's Failure to Respond to Alibi Notice

On February 8, 1983, Ashley filed a Notice of Intent to Offer Alibi, stating that "on the date of the alleged offenses as stated in the informations" he was in Kenosha, Wisconsin. At the same time, Ashley requested that the State respond with a specific statement of the exact place and time the offenses allegedly occurred. The State failed to provide such a response. At trial, the State offered evidence over appellant's objection that Ashley was present at the scenes of the crimes in Michigan City on June 8, 1982. This evidence was consistent with the place and time alleged in the information. Ashley argues that, because of the State's failure to respond to his alibi notice, the trial court erred by allowing the State to present evidence showing Ashley to be at a place other than Kenosha, Wisconsin, on June 8, 1982, as designated in his alibi notice.

Appellant correctly points out that at the time of the offenses and at the time Ashley was charged, sanctions for failure to comply with a request for a specific statement of time and place were provided by Ind. Code § 35-5-1-3 (Burns 1979 Repl.). However, this section was repealed effective September 1, 1982. Acts 1981, P.L. 298, §§ 9, 10(c), and recodified in Ind. Code § 35-36-4-3 (Burns 1984 Supp.). This recodification is significant because it became effective after the offenses occurred and after the defendant was charged but before the defendant filed his alibi notice. The sanctions authorized by these code sections also differ: under the former code, the State's failure to respond to the alibi notice absent good cause resulted in the exclusion of evidence showing the defend-

ant to be at a place and time *other than that stated in his alibi notice;* under the recodification, a failure to comply absent good cause results in the exclusion of evidence showing the defendant to be at a place and time *different from that stated in the information or indictment.* The application of the proper statute is therefore pivotal to deciding this issue.

The legislature specified that repeal of the prior code section would not affect any rights which accrued before September 1, 1982. Acts 1981 P.L. 298 § 9(b). In this case, the crimes occured on June 8, 1982, and Ashley was charged on July 2, 1982. However, a defendant's right to exclusion of evidence of time and place arises upon his compliance with his duties under the alibi statute. Ind. Code 35–5–1–1 (Burns 1979 Repl.) (repealed and recodified by Ind. Code 35–36–4–1) (Burns 1984 Supp.); *Dew v. State* (1981), 275 Ind., 304, 307, 416 N.E.2d 1245, 1246. We therefore look to the date of Ashley's compliance with the alibi notice provisions of the statute to determine which code provision applies. We find that Ashley's right to exclusion of evidence of time and place accrued upon his compliance by filing a notice of alibi on February 8, 1983, and that the applicable sanction for the State's failure to respond is provided by the recodified statute, Ind. Code § 35–36–4–3. *See: Williams v. State* (1985), Ind., 478 N.E.2d 47 (Ind. Code § 35–36–4–1 (Burns 1984 Supp.), a recodification providing procedure for alibi notice, also effective September 1, 1982, applied where offense occurred September 2, 1981, crime charged September 11, 1981, and alibi notice filed November 11, 1982). As the appropriate sanction is exclusion of evidence showing defendant to be at a time and place different from that stated in the information or indictment, no error occurred when the state presented evidence showing the defendant to be at a place and time consistent with the charging information.

## II. *Rearraignment on Habitual Offender Charge*

■ The original charges against Ashley, filed on June 8, 1982, alleged that Ashley was an habitual offender by virtue of prior unrelated felony convictions for armed robbery in October 1977 and delivery of a controlled substance in February 1975. On September 3, 1982, Ashley waived formal arraignment and entered a plea of not guilty to all counts. The habitual offender information was amended four times prior to trial. The final amendment, filed on September 9, 1983, alleged that Ashley had been previously convicted of the prior unrelated felonies of robbery in December 1977, commission of a felony while armed in October 1977, delivery of a controlled substance in April, 1975, and robbery in May 1967. Substantially the same offenses had been alleged in previous amendments, varying only according to the date of prior convictions.

On the morning of trial, Ashley requested rearraignment on the amended habitual offender count. The judge denied this request and proceeded with the trial, over defendant's objection. Ashley alleges that the trial court erred by refusing to rearraign him on the amended habitual offender charge.

Appellant correctly notes that habitual offender allegations must be charged in the same manner as a criminal offense, *Sears v. State* (1983), Ind., 456 N.E.2d 390, 393, and "must contain all of the procedural matters and safeguards of the original underlying charges." *Griffin v. State* (1982), Ind., 439 N.E.2d 160, 165. Arraignment is one of the procedural safeguards required for habitual offender allegations. *Id.* at 164.

The purpose of arraignment is to give notice to the accused of the charges against him and to permit him to enter a plea to those charges. *Walker v. State* (1983), Ind., 444 N.E.2d 842, 844. While arraignment is the appropriate procedure for habitual offender charges, failure to arraign is not grounds for reversal absent any prejudice which results. *Edwards v. State* (1985), Ind., 479 N.E.2d 541, 548.

The trial court's denial of Ashley's request for rearraignment did not result in

any discernable prejudice. Ashley had been aware of the habitual offender charges for over a year and had been informed ten days before trial of the specific prior convictions the State intended to prove. He alleges no surprise at the charges, nor did he indicate a need for a continuance to allow him to prepare a defense to the charges.

Appellant argues that reversal is required because he did not have the opportunity to plead to the amended habitual offender charge. He has not indicated whether he wanted to admit the allegation or deny it. If he wanted to admit, the trial judge would have given him an enhanced sentence. If he wanted to deny, the trial judge would have required the State to prove the allegation, which it did.

The procedural rights protected by arraignment were safeguarded in this case. The defendant had notice of the charges against him and had an adequate opportunity to prepare a defense. He had entered a plea to the charges, and at no time expressed a desire to change that plea. No prejudice has been shown in the denial of the requested rearraignment.

### III. Admission of Briefcase and Contents

At trial, the State introduced a briefcase recovered from the trunk of the stolen vehicle and several documents bearing defendant's name which were inside. Ashley sought to exclude this evidence through a motion *in limine*, which the trial court overruled, and again objected to its admission at trial. Over these objections, the briefcase and its contents were admitted and exhibited to the jury.

■ Appellant now alleges that this evidence is irrelevant and insufficiently connected to him or to the commission of the crime, that it is too remote, that the documents are inadmissible hearsay and are not properly authenticated, and that the probative value of the evidence is outweighed by its prejudicial effect. The State, in its brief, answers that the evidence is relevant. In this contention, the

State is correct. Evidence is relevant if it tends to prove or disprove an issue material to the case. *White v. State* (1981), Ind., 425 N.E.2d 95, 97. The presence of the briefcase and documents in the stolen vehicle suggests that Ashley was in possession of the vehicle during the time it was absent from the rightful owner's possession. The evidence was relevant.

■ Ashley further argues that the state established an insufficient foundation for the admission of this physical evidence, which requires two showings: 1) that the item be connected to the defendant and the commission of the crime, and 2) that the item be "like" the item associated with the crime. *Springer v. State* (1984), Ind., 463 N.E.2d 243, 245. Ashley first alleges that the connection between the briefcase and the defendant and commission of the crime is insufficient. However, it is not necessary to establish that the evidence was in the possession of the accused for the item to be admissible. It is sufficient that the evidence constitutes a small but legitimate link in the chain of evidence connecting defendant with the crime. *Mallott v. State* (1985), Ind., 485 N.E.2d 879, 884; *Martin v. State* (1986), Ind., 490 N.E.2d 309, 314.

In this case, Ashley was never seen in possession of the brief case. However, he was seen leaving the car lot with the car and the keys for the trunk and ignition. When the car was recovered nine days later the keys were missing, but the trunk lid showed no signs of tampering. When the owners gained access to the trunk by rewiring the trunk release, they discovered the brief case and documents, which had not been present in the car before it was removed from the lot. Certainly, one inference to be drawn is that Ashley was the owner of the brief case and left it in the car during the commission of the theft. This inference is sufficient to connect the evidence to Ashley and the theft. The tenuous nature of the connection or the possibility that other inferences might be drawn goes to the weight of the evidence, not its admissibility. *Id.*

Appellant also contends that a proper foundation required testimony that the brief case was "like" the one associated with the crime. Establishing this simile was not necessary, however. The brief case which was admitted was in fact the very brief case which had been found in the car. It was identified by the owner and his employees who discovered it, and the chain of custody was established by the police officers who handled the evidence. Both requirements for establishing a foundation for the admission of this evidence were met.

■ Appellant also argues that the brief case "found nine days after the crime ... was too remote for admissibility." However, exclusion of evidence as remote is within the discretion of the trial court. That discretion will not be disturbed absent a clear showing of abuse. *Shaw v. Shaw* (1973), 159 Ind.App. 33, 41, 304 N.E.2d 536, 540. Here, the evidence was discovered immediately upon the return of the stolen property; a more timely recovery of this evidence was not possible. We find no abuse of discretion in its admission.

■ Turning specifically to the documents contained in the brief case, appellant maintains that they are inadmissible hearsay. Hearsay is defined as an out of court statement offered for the truth of the matter contained therein. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309, 1313. Appellant asserts that these documents were offered to prove the truth of the matters contained. This assertion is not supported by the record, which reveals that the documents included a certificate of

graduation in Ashley's name from a barber school, an envelope addressed to Ashley from a utility company, and an appointment calendar containing Ashley's identification information. These documents were not offered to prove that Ashley was a certified barber, that he corresponded with a utility company, or that he had a busy appointment calendar. These documents were clearly not offered for the proof of the matter contained therein, and therefore are not hearsay.

■ Ashley also argues that the documents were inadmissible because they were not properly authenticated. Generally, proof of authentication is required before documents may be admitted. *Blevins v. State* (1973), 259 Ind. 618, 627, 291 N.E.2d 84, 89. The admissibility of documents requiring authentication is within the discretion of the trial court, and will be reversed only on a clear showing of error. *Wolfe v. State* (1981), Ind., 426 N.E.2d 647, 655.

We usually consider the question of authentication of documents when their legal significance pertains to their execution, authorship, or content.[1] In this case, we find it unnecessary to address the adequacy of the authentication; the purpose of the evidence did not require that the documents be authenticated. The authorship or execution of the documents is not in issue, nor is the content of the documents central to the case. The purpose of offering the documents was merely to show their own existence, and, more particularly, their existence in the stolen vehicle. "When the exe-

---

**1.** *See: Wolfe v. State* (1981), Ind., 426 N.E.2d 647 (inculpatory letter written by defendant properly authenticated by signature comparison); *Kern v. State* (1981), Ind., 426 N.E.2d 385 (inculpatory letter written by defendant properly admitted as self-authenticating); *Gadacz v. State* (1981), Ind., 426 N.E.2d 376 (memo book referring to "certain dates" when alibi defense offered sufficiently authenticated by showing that book was found in car which was under the exclusive control of defendant); *Fair v. State* (1977), 266 Ind. 380, 364 N.E.2d 1007 (inculpatory post card allegedly written by defendant sufficiently authenticated; fact that authorship not proven conclusively goes to weight, not ad-

missibility); *Blevins v. State* (1973), 259 Ind. 618, 291 N.E.2d 84 (notations allegedly made by victim not properly authenticated, but error was harmless where contents of notations were proven through other testimony); *Kramer v. State* (1974), 161 Ind.App. 619, 317 N.E.2d 203 (letter to defendant offering sale of marijuana sufficiently authenticated "[b]ecause the letter was not the basis of the prosecution and because of the absence of any evidence indicating the letter was fraudulent ..." 317 at 207); *Millington v. State* (1972), 154 Ind.App. 42, 289 N.E.2d 161 (trade school application executed on date of offense when alibi defense offered not sufficiently authenticated).

cution of a document is not in issue, but only ... the fact of the existence of a document of such tenor, no authentication is necessary." 4 *Wigmore on Evidence* § 2132, at 714. The unauthenticated documents were properly admitted.

Finally, Ashley argues that the probative value of this evidence is outweighed by its prejudicial effect. No particular prejudice to Ashley is asserted; we presume he refers to the prejudice inherent in all evidence which tends to show the defendant's guilt. If such prejudice were sufficient to preclude admission, very few offers on behalf of the State would succeed. The balancing of the probative value of evidence against its prejudicial effect is once again a task within the wide discretion of the trial court. We see no evidence that this discretion was abused.

### IV. *Evidence of Telephone Conversation*

■ After the defendant left the car lot with the vehicle, Walter received two telephone calls from an individual purported to be Ashley. Over the objection of defendant, Walter testified about the substance of these conversations. The admission of this evidence is claimed to be error because the person making the call was not sufficiently identified as Ashley.

This Court has long required that a caller's identity be established as a foundation for the admission of the content of the telephone call. *Davis v. State* (1928), 200 Ind. 88, 161 N.E. 375 (overruled on other grounds). Sufficient identification has been based on witness testimony that he was familiar with the caller's voice and recognized it in conversation. *Allison v. State* (1960), 240 Ind. 556, 166 N.E.2d 171.

In this case, Walter had talked with Ashley for approximately fifteen minutes before Ashley left the lot. In describing the voice of the caller, Walter testified that "it sounded the same." Further, the identification of Ashley can be inferred from the circumstances of the calls. The caller identified himself as "the guy that's driving the Cadillac." He attributed the delay in re-

turning the vehicle to "battery trouble" and referred to the insurance check Ashley had discussed earlier with Walter. These were circumstances known only to the person who left with the vehicle. The inclusion of these details in the conversation reasonably leads to the inference that the caller was Ashley. The identity of the caller need not be proved beyond a reasonable doubt. Any doubt regarding the credibility of the voice identification goes to the weight of the evidence, not its admissibility. *Id.*, Ind., at 564, 166 N.E.2d, at 174. Moreover, it is not clear that this evidence was in any way central to the material issues in the trial. Whether Ashley did or did not have battery trouble is of little significance.

### V. *Admission of Photographs*

■ Finally, Ashley urges that photographs of himself and another black male were improperly admitted. Exhibit No. 5 is a black and white photograph of Ashley, which depicts both a frontal and profile view. Exhibit No. 4 is described in the testimony of Officer Dabagia as a photographic array containing nine pictures. However, the exhibit displayed as No. 4 in the record is a black and white photograph of a black male, also depicting a frontal and profile view. We take this photograph to be one of those included in the photographic array. On the back of the photograph is information including the subject's name, a charged crime, date of conviction and date of parole. No information of any kind is found on the back of Ashley's picture.

Appellant argues that these "mug shots" were unduly prejudicial. "Mug shots" are generally inadmissible as the jury may infer from such photographs that the defendant has a prior criminal history. *Blue v. State* (1968), 250 Ind. 249, 255, 235 N.E.2d 471, 474. However, where the photographs have independent probative value and the State has attempted to minimize the prejudicial effect, the photographs may be admissible. *Richey v. State* (1981), Ind., 426 N.E.2d 389, 394.

Admittedly, these photographs do not appear to be taken from a family photo album. However, they do have independent probative value on the issue of Ashley's identification. Though Erikson had previously identified Ashley in court, this identification had been attacked on cross-examination. Particularly, the hairstyle worn by Ashley at trial had changed from the time the crimes were committed. The photographs demonstrated that a similarly coiffed Ashley had been previously identified from a photographic array. *See, Walker v. State* (1984), Ind., 471 N.E.2d 1089.

Moreover, the State made every effort to minimize the prejudicial effect of the photographs: the tags which identified the exhibits were strategically placed over the area which might have contained identification information and the background of the photographs does not indicate that the individuals were incarcerated. We do not approve of the information found on the back of Exhibit No. 4, as it was indicative of the subject's criminal history. However, no such indication of criminal history was present on Ashley's photograph. Therefore, any improper influence was limited to the subject of Exhibit No. 4. No prejudice attached to Ashley as a result of the admission of these exhibits.

Finding no error, we affirm the judgment of the trial court.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.