STATE of Indiana, Appellant–Plaintiff,

v.

Lecoy T. MOTLEY, Appellee–
Defendant.

No. 49A02–0604–CR–313.

Court of Appeals of Indiana.

Feb. 7, 2007.

Steve Carter, Indiana Attorney General
of Indiana, Cynthia L. Ploughe, Deputy
Attorney General, Indianapolis, IN, for
Appellant.

## OPINION

ROBB, Judge.

### Case Summary and Issue

The State appeals after Lecoy Motley, who was charged with murder and the Class C felony of carrying a handgun without a license, was acquitted following a jury trial. The State raises the issue of whether the trial court properly ruled that recordings of Motley's jailhouse telephone calls were inadmissible for lack of foundation. Concluding that the State provided sufficient foundation supporting admissibility of the recordings, we reverse.

### Facts and Procedural History

Prior to trial, Motley's Motion in Limine including the recorded telephone calls was granted. Nevertheless, the State attempted to lay a foundation during trial so that the recordings could be presented to the jury. In preliminary questioning, Officer Todd Lapin, a homicide investigator with the Indianapolis Police Department, testified that he could identify Motley's voice in the recordings. Officer Lapin testified to having two conversations with Motley: one lasting only seconds and over a cell phone, and a conversation, in-person, which was "more than a couple sentences," "more than a paragraph," and that lasted several minutes. Transcript at 286.

Officer Lapin also testified to the circumstances of the conversations as well as details in the content of the conversations that led him to identify Motley's voice. These included remarks made to Motley's name and nickname, and references to the "actual incident." *Id.* at 290. Other remarks in the phone calls were made to a witness for the State, whose voice Officer Lapin could also identify, and who told Officer Lapin that he was being warned not to appear in court to testify against Motley. However, Motley was quick to point out that the compact discs containing the recordings were labeled with Motley's name. Having established this, Officer Lapin responded that he listened to them "thinking and believing that the person on there was Mr. Motley." *Id.* at 294.

Despite testimony from Officer Lapin that he had previous conversations with Motley from which he could identify Motley's voice on the recordings, and that the content of the conversations supported his belief that Motley made the phone calls, the trial court excluded the recordings based on insufficient foundation. The next day, the State filed a motion for the trial court to reconsider its ruling on the recordings, and the trial court denied this motion. After Motley's acquittal, the State filed a Notice of Appeal, and the case is now properly before us.

### Discussion and Decision

 The State contends that it presented a sufficient foundation by identifying Motley's voice in the recordings, and that the recordings should therefore have been admitted as evidence at trial. As a preliminary matter, we note that "[w]hen the defendant has been acquitted and the State appeals a reserved question of law, only questions of law are considered by this court. Although the issue addressed is moot, the purpose of this appeal is to provide guidance to the trial court[ ] in future cases." *State v. Lloyd,* 800 N.E.2d 196, 198 (Ind.Ct.App.2003). As for the substance of the State's appeal, the determination of whether to admit or exclude evidence is entrusted to the trial court and will only be reversed for an abuse of discretion, which occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Washington v. State,* 840 N.E.2d 873, 879 (Ind.Ct.App.2006), *trans. denied.*

Indiana courts have long required that a caller's identity be established as a foundation for the admission of the content of a telephone call. *Ashley v. State*, 493 N.E.2d 768, 774 (Ind.1986). Sufficient identification may be derived from testimony by a witness familiar with the caller's voice and who recognizes it in the conversation, as well as an inference that the voice belongs to an individual based upon the circumstances and details included in the conversation. *Id.* "The identity of the caller need not be proved beyond a reasonable doubt. Any doubt regarding the credibility of the voice identification goes to the weight of the evidence, not its admissibility." *Id.*

In *Ashley*, a witness testified about the content of two telephone calls he received from a person purporting to be Ashley. The witness had spoken previously with Ashley for a period of fifteen minutes, and testified that the voice on the phone "sounded the same." *Id.* In addition, circumstances known only to Ashley were included in the phone conversations. *Id.* As a result, our supreme court upheld the admissibility of the testimony based on sufficient identification of Ashley as the caller. *Id.*

In a similar case, *Starks v. State*, 517 N.E.2d 46, 50 (Ind.1987), *modified on other grounds on reh'g*, 523 N.E.2d 735 (Ind. 1988), our supreme court found no error where testimony of State's witnesses concerned an alleged telephone call with Starks, in which he said to them, "If you testify against me, I will blow your head off and I will blow your wife's head off too." *Id.* Prior to the threatening statements, although the husband had spoken to Starks in person for approximately an hour, his wife had spoken only briefly with Starks in a previous phone call. Our supreme court held that the wife's identification, based on her brief prior conversation

with Starks, along with an inference that the caller was Starks arising from the circumstance and details of the call, was sufficient foundation for the admissibility of the evidence. *Id.*

Here, Officer Lapin testified that he had prior conversations with Motley, from which he could identify Motley's voice in the recordings. Although one of those conversations was described in terms of seconds, the other was explained as being longer in duration. Officer Lapin also testified that the circumstances and details of the calls, such as remarks made to Motley's name and nickname, led him to believe he was listening to Motley's voice. As such, the State provided sufficient identification of Motley as the caller in order to establish a foundation for use of the recordings at trial. Any doubt about the identification of Motley's voice due to the length of the previous conversations between Officer Lapin and Motley or the labeling of the compact discs with Motley's name goes to the weight of the evidence rather than its admissibility. Therefore, the trial court's exclusion of the recordings was against the logic and effect of the facts and circumstances before it.

### Conclusion

The testimony provided by Officer Lapin regarding his familiarity with Motley's voice prior to recognizing it in recorded telephone calls, as well as the circumstances and details of the recorded conversations, was sufficient to establish a foundation for the trial court to admit the recordings into evidence. Therefore, we reverse the trial court's ruling excluding the recordings.

Reversed.

BARNES, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Although I believe that the trial court would have been within its permissible discretion to have admitted the recordings of Motley's telephone conversations, I am unable to agree that the court abused that discretion in excluding the evidence for lack of an adequate foundation.

Abuse of discretion is our standard of review as to evidentiary rulings. That review is appropriately very deferential to the trial court's ruling. *Bezy v. Loftus,* 581 N.E.2d 965, 968 (Ind.Ct.App.1991). In a criminal setting our Supreme Court has held that "[a] trial court ruling excluding evidence will generally be upheld if there is any basis upon which the ruling is correct," and normally it involves a balancing between the probative value of the excluded evidence and the prejudice to the adverse party if such evidence were to be admitted. *Rohm v. State,* 558 N.E.2d 1100, 1103 (Ind.1990).

My research has uncovered no case decision reversing a judgment for excluding evidence of identification by way of a telephone conversation. I am aware of two cases involving affirmance of an exclusion of evidence proffered by a criminal defendant. *See King v. State,* 560 N.E.2d 491, 494–95 Ind.1990); *Brafford v. State,* 516 N.E.2d 45 (Ind.1987). The other cases disclosed in my research affirm instances in which the State's evidence was admitted over objection by the defendant.

In *Washington v. State,* 840 N.E.2d 873, 884 (Ind.Ct.App.2006), *trans. denied,* cited by the majority here, the court held that exclusion of defendant's alibi evidence by reason of a discovery violation was harmless error with respect to the defendant's claim of being unconstitutionally precluded from presenting witnesses on his behalf. The court also held that the exclusion was not an abuse of discretion. *Washington,* 840 N.E.2d at 886. A separate opinion by

Chief Judge Kirsch in *Washington,* however, noted that the trial court "properly balanced the competing interests" in the necessarily fact-sensitive determination and concluded that the court was "within its discretion in excluding the testimony." 840 N.E.2d at 890.

In this case, after listening to the recordings, Officer Lapin stated that he was "thinking and believing" that the person on the phone conversation was Motley. Lapin testified that he had met with Motley upon only one occasion, i.e. at the time of the arrest, other than a cell-phone conversation with Motley which lasted only seconds. Thus it was reasonable for the trial court to conclude that the limited time available to hear Motley's voice was an inadequate foundation for Lapin's identification of Motley's voice on the recorded telephone conversations from the jail. Furthermore, and perhaps most importantly, Lapin testified that even before he listened to the recordings, he "knew that the person on the phone was in fact LeCoy Motley ... *based on the information I had.*" Tr. at 293 (emphasis supplied). That information included the fact that Motley's name had been placed on the two computer disks given to him by Detective Wager, who obtained the recordings of the phone calls.

The ruling of the trial court excluding the evidence was as follows:

THE COURT: "[N]o disrespect to Det. Lappin, Det. Lappin's a very good detective, but there are other ways to identify this Defendant's voice, if it's this Defendant's voice. And quite honestly we all know it's this Defendant's voice, okay? But that's part of my problem is when he get's [sic] two C.D.s that say "Lecoy Motley, Motley, Two" and Mr. Moss' question to him, you know, You knew this was Lecoy Motley before you even listened to it. Yes. He's being honest,

he did, we all knew that. But that doesn't get past the fact, Mr. Baldwin, that you've got to lay a proper foundation to identify that voice, that has not been laid and so I'm going to sustain—and like I said, Reneldo Young, yeah, he had a sufficient conversation with him, he knows who he is, you know. Earlier in this trial he told me, you know, you guys said you spoke to him last night, he knows his voice, all right? This Defendant's different, he's not had very lengthy conversations with him. And I don't think you lay the proper foundation to identify his voice and so based on that I'm going to sustain your objection." Tr. at 299–300.

In his discretion, the trial court was entitled to conclude that merely "thinking and believing" that the voice was Motley was inadequate identification foundation for admission of the evidence given the manner in which Lapin reached his conclusion.

Given the deferential standard of review we must give to discretionary evidentiary rulings, I believe Chief Judge Kirsch's opinion in *Washington* was the more appropriate resolution to the issue in that case. I would so hold in the case before us.[1]

---

1. Having reviewed the record, it is my considered view that absence of the excluded telephone conversations did not impact the jury's decision to acquit Motley of the murder charge. Rather, in my estimation, it is much more likely that the jury found themselves unable to convict Motley beyond a reasonable doubt because Reneldo Young was the more likely shooter. Motley was not seen to have a gun. Young, on the other hand, had recently purchased a gun and had test-fired it. The only other witness at the scene testified that before he heard any shots fired he had run to the rear of the van in which the victim was sitting, and when the witness turned around he saw Reneldo Young standing near the victim and Motley. Young, having fingered Motley to the police, was to be called as a State's witness but inexplicably failed to appear for the trial and could not be located.