## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2017, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David L. Allen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 21, 2017

Court of Appeals Case No.
02A03-1607-CR-1732

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Judge

Trial Court Cause No.
02D05-1506-F4-38

**Altice, Judge.**

## Case Summary

[1] David L. Allen was convicted, following a jury trial, of Level 4 felony arson, Level 4 felony burglary, and Level 6 felony intimidation. The trial court sentenced Allen to an aggregate term of nineteen years in prison. On appeal, Allen raises a number of issues:

1. Did the State present sufficient evidence to support the arson and burglary convictions?

2. Should Allen have been released on his own recognizance based on Indiana Criminal Rule 4(A)?

3. Did the trial court abuse its discretion in admitting certain evidence?

4. Is Allen's sentence inappropriate in light of his character and the nature of the offenses?

[2] We affirm.

## Facts & Procedural History

[3] Allen began dating Tierre Jordan in December 2011, and he moved into her Fort Wayne home in February 2013. He lived there with Jordan and her three minor children until July 13, 2014, when Jordan asked him to leave and indicated that she no longer wished to be in a relationship with him. Allen responded by punching Jordan multiple times, kicking her, and stomping on her face. Jordan called the police that night and made a report of the abuse but did not follow through with charges.

[4] After the attack, Jordan and Allen remained separated for a few months. Allen eventually apologized and asked Jordan to take him back, but Jordan pleaded with him to leave her alone. He then began making numerous threatening

phone calls to her, three of which Jordan recorded in early October 2014. He repeatedly warned Jordan that there would be problems if they were not together. For example, he indicated on multiple occasions that she would have no house to come home to because he would burn it down. Allen also warned that Jordan better know how to shoot because he could bring his gun and shoot her in the face. When Jordan indicated that she did not want to be with someone she was scared of, Allen explained that she would only need to worry about him putting his hands on her if they were *not* together.

[5] Jordan finally relented and let Allen move back into her home in December 2014. Although she was afraid of Allen, Jordan explained at trial that she still loved him and, therefore, agreed to try and work things out.

[6] Sometime over the weekend of February 20, 2015, Jordan ended her relationship with Allen once again, but he would not accept the breakup. Initially, he pleaded with Jordan that they could work things out. His phone calls became more aggressive by the day and he eventually resorted to threats. Jordan became very scared and recorded some of the calls.

[7] During one phone call on February 24, 2015, Allen warned that he was coming the next day to talk with her after work and that the kids better not be there. He told her not to mess with him or he would make her pay. He threatened that she was about to be evicted and would see her house on the news. According to Allen, the damage would be so great that she would have nothing to come home to.

[8]     In another recorded call on February 25, 2015, Allen made a number of threats to Jordan in a heated and lengthy exchange. Allen warned that his anger was building and that he would never leave her alone if she did not take him back. He threatened, among other things, that he would kill her by unloading (presumably a gun) in her face and that her home was going to be on fire on the news. He stated that the home would be going up in flames that night. In fact, Allen stated that he had been inside the home already that day while she was at work, and he was coming again. The call concluded with him stating that he was going to stomp Jordan's ass out and shoot her in the face.

[9]     Jordan immediately contacted the police and made a report of the threatening calls. As directed by the officer, she went the next day to file for a restraining order. At some point over the next several days, she also changed the locks to her front and back doors. However, she did not change the lock to an outside access door to her garage to which Allen still had a key. Jordan was afraid of Allen, so she stopped going to her college classes and either stayed in a motel or had friends or family stay with her at the house.

[10]    On the morning of March 5, 2015, Jordan left home and took her children to school before going to work. At that time, Allen still had belongings in the home that he had refused to pick up. He had clothes in a closet and a dresser in the master bedroom. Next to the dresser, Allen also had a box with his important papers, such as his birth certificate and social security card.

[11]     Fort Wayne firefighters were called to Jordan's home around noon that same day.  The home had been intentionally set on fire with gasoline in two locations.  The bulk of the fire was in the upstairs master bedroom and a small fire had been started on the main floor.  There were no signs of forced entry, the alarm system to the house had been disarmed, and a smoke detector located on the main floor had been removed from the ceiling.  The fire caused $168,000 in damage and took over four months to repair, displacing Jordan and her children during that time.

[12]     After the fire was extinguished, Jordan walked the scene with investigators. She noted that all of Allen's belongings had been removed from the home. Additionally, a gas can that was usually kept in the garage was inside the home. Jordan provided investigators with the two phone numbers regularly used by Allen.  These numbers were for prepaid cell phones.  Based on telephone records for these numbers, investigators were able to track one of these devices on the day of the fire.  The device traveled from Richmond to Fort Wayne that morning.  A call at 10:53 a.m. placed the device within the service area that included Jordan's home.  The next call was at 12:43 p.m. in a different area of Fort Wayne.

[13]     Allen communicated with Jordan after the fire and indicated that she should not have changed the locks.  Jordan continued to receive a number of calls – over a hundred – on the day of and the day after the fire.  On March 6, she called police for assistance as she returned to clear out her home.  Additionally,

she made a report about continued threats. Jordan made another report regarding harassing calls about five days later.

[14] On June 26, 2015, the State charged Allen with Level 4 felony arson, Level 4 felony burglary, and Level 6 felony intimidation. Allen was arrested on July 10, 2015. His jury trial commenced on June 7, 2016, and the jury found Allen guilty as charged. The trial court entered judgments of conviction on each count and sentenced Allen, on July 6, 2016, to twelve years for arson, six years for burglary, and one year for intimidation. The terms of imprisonment were ordered to be served consecutively, resulting in an aggregate sentence of nineteen years in prison. Allen appeals both his convictions and sentence. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Sufficiency of the Evidence

[15] Allen initially challenges the sufficiency of the evidence regarding the arson and burglary convictions. He argues that there was no evidence tying him to Jordan's home on the day of the fire such as eyewitness testimony, finger prints, or other physical evidence.

[16] On review for sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence, and we will affirm unless no reasonable fact-finder could

find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence will be found sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.* at 147. "Moreover, arson is almost always subject to proof by circumstantial evidence, and we defer to the jury's determination that the defendant set the fire." *Belser v. State*, 727 N.E.2d 457, 464 (Ind. Ct. App. 2000), *trans. denied*.

[17] Allen does not dispute that the evidence established someone entered Jordan's home without permission and intentionally set two fires using gasoline. His claim is simply that the evidence failed to establish that he committed the crimes. We reject his blatant request for us to reweigh the evidence.

[18] The State presented overwhelming circumstantial evidence that Allen was the individual who set Jordan's home ablaze. Allen would not accept Jordan's decision to break up with him. He threatened repeatedly that he would burn down her home if she refused to get back together with him. According to Allen, she was either with him or against him and he would never leave her alone. In a recorded call made eight days before the fire, Allen warned Jordan that he had been in the home that day and was coming back. During his lengthy rant, Allen threatened that he was going to kill Jordan, set her home on fire, shoot her in the face, and stomp her ass out.

[19] On the morning of the arson, phone records establish that one of Allen's prepaid cell phones traveled from Richmond to Fort Wayne and was in the area

of Jordan's home shortly before the fire. Additionally, all of Allen's belongings – just his – were removed from the master bedroom before the bed in that room was set ablaze using gasoline. Although Jordan had changed some locks to the home, she had failed to change the lock to the outside garage door, and Allen had a key to that door. He also knew the code to deactivate the home's alarm system. At some point after the fire, Allen taunted Jordan by telling her that she should not have changed the locks.

[20] The State presented ample evidence to support Allen's convictions for burglary and arson. Accordingly, his sufficiency challenge fails.

## 2. Criminal Rule 4(A)

[21] Allen argues that his rights under Crim. R. 4(A)[1] were violated because he was held in jail longer than six months pending trial. He filed a motion to be released on his own recognizance on January 12, 2016, and renewed the motion on February 23, 2016. In both instances, the trial court denied the

---

[1] The rule provides in relevant part:

> No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar …. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so detained shall be released on his own recognizance at the conclusion of the six-month period aforesaid and may be held to answer a criminal charge against him within the limitations provided for in subsection (C) of this rule.

motion, finding court congestion to be the cause of the recent delays. Allen unsuccessfully attempted an interlocutory appeal of the February order.

[22] In this appeal, Allen makes no attempt to establish that the trial court's findings of court congestion were in error. Further, even if Allen was improperly detained beyond six months, his remedy would have been release from jail on his own recognizance pending trial, not discharge from criminal liability. *See Joyner v. State*, 678 N.E.2d 386, 392 (Ind. 1997). Because Allen has already been tried and convicted, there is no longer any relief available to him for the alleged Crim. R. 4(A) violation. *See McQueen v. State*, 711 N.E.2d 503, 505 (Ind. 1999).

### 3. Evidentiary Rulings

[23] Allen challenges several evidentiary rulings by the trial court. Our standard of review in this regard is well settled. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb such a ruling only where the appellant has shown an abuse of that discretion. *Bowman v. State*, 51 N.E.3d 1174, 1180 (Ind. 2016). "An abuse of discretion occurs only 'if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Id.* (quoting *Carpenter v. State,* 18 N.E.3d 998, 1001 (Ind. 2014)).

[24] Initially, Allen contends that the trial court erred by admitting the recorded telephone conversations and the telephone records for two prepaid phones. His

argument is based on lack of authentication. Specifically, he contends that the recorded calls and the phone numbers were not sufficiently tied to him.

[25] Indiana Evidence Rule 901(a) provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." This may be done in a variety of ways, and Evid. R. 901(b) provides a non-exhaustive list.

[26] With respect to telephone calls, the caller's identity may be established by testimony of a witness familiar with the caller's voice and who recognizes it in the conversation. *State v. Motley*, 860 N.E.2d 1264, 1266 (Ind. Ct. App. 2007). The caller's identity may also be inferred from the circumstances and details included in the conversation. *Id*. In this case, based on Jordan's testimony and the content of the calls, there is absolutely no doubt that the recorded calls were between Jordan and Allen. Accordingly, the trial court did not abuse its discretion by admitting this evidence.

[27] Regarding the phone records, the evidence establishes that Jordan identified two phone numbers that were used by Allen, whom she had dated for a significant period of time and spoken on the phone to daily. Investigators obtained records for these two phone numbers. Allen argues that the State failed to "present any subscriber documentation from the cellular carrier to prove [his] ownership of these numbers." *Appellant's Brief* at 21. The record indicates, however, that these numbers were for prepaid phones that would not

have subscribers. Jordan's testimony was sufficient to establish that the phone numbers and their related records were for cell phones regularly used by Allen.

[28] Allen's final evidentiary argument relates to the admission of evidence regarding his July 2014 battery of Jordan after she tried to break up with him the first time. Allen claims this constituted inadmissible 404(b) evidence.

[29] Indiana Evidence Rule 404(b) provides in relevant part:[2]

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident….

In assessing the admissibility of evidence under 404(b), the trial court must: (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). We employ the same test in determining whether the trial court abused its discretion. *Id.*

---

[2] We note that Allen and the State both provide a former version of Evid. R. 404(b). This rule was amended in 2013 with an effective date of January 1, 2014.

Here, evidence of the prior attack was properly admitted as relevant evidence of motive and the relationship between Jordan and Allen. *See id*. at 408 ("Numerous cases have held that where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime."). The July 2014 attack showed Allen's extreme hostility toward Jordan when she wanted to end their relationship. This evidence was probative of Allen's motive – retribution for finally ending the relationship seven months later – for breaking into Jordan's home and setting it on fire. Moreover, Allen has not established that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice under Evid. R. 403.

### 4. Sentencing

Finally, Allen challenges the appropriateness of the aggregate nineteen-year sentence imposed by the trial court. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State*, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light

of the nature of the offense and the character of the offender." *Anglemyer*, 868 N.E.2d at 491. Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The appellant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[32] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[33] In order to assess the appropriateness of a sentence, we look first to the statutory ranges established for the classification of the relevant offenses. A Level 4 felony has a sentencing range of two to twelve years, with the advisory

sentence being six years. Ind. Code § 35-50-2-5.5. Thus, Allen received the maximum sentence for his arson conviction and the advisory sentence for his burglary conviction. He also received the advisory sentence for his Level 6 intimidation conviction. *See* I.C. § 35-50-2-7(b) (providing for a sentencing range of six months to two and one-half years for a Level 6 felony, with an advisory sentence of one year). The trial court ordered the terms to be served consecutively for an aggregate sentence of nineteen years. Accordingly, Allen received seven and one-half years less than the maximum aggregate sentence.

[34] The nature of Allen's offenses was particularly severe. Allen engaged in a sustained campaign of terror against Jordan for the simple reason that she wanted to break up with him. During his unrelenting calls, he threatened to kill her, shoot her in the face, stomp her out, and burn down the house in which she and her three minor children lived. His threats caused Jordan immense fear because she knew what he was capable of doing. As a result of the threats, Jordan stopped attending her classes and did not feel safe in her own home, opting to stay in a motel or have others stay with her at her home. She also notified the police on more than one occasion and changed the locks to her home. Allen's most prevalent threat – to burn Jordan's house down – came to fruition on March 5, 2015. After removing his belongings, Allen doused Jordan's bed with gasoline and set it on fire. He also set another fire on the first level of the house. The arson resulted in $168,000 in damage to Jordan's home and displaced the family of four for nearly five months. In addition, Allen

continued to terrorize Jordan after the fire by telling her that she should not have changed the locks.

[35] While the nature of the offenses reflect poorly on Allen's character, so does his extensive criminal history. Allen has five prior felony convictions and three misdemeanor convictions, with convictions in Indiana (four different counties) and Ohio. Allen has spent the majority of his adult life incarcerated. His most serious past convictions are for class B felony dealing in cocaine (1997), class C felony prisoner possessing dangerous device/material (2002), class C felony possession of cocaine (2007), and felony trafficking cocaine (Ohio 2012). Allen has had his felony probation revoked (1995), a suspended sentence revoked (1996), and his class B felony sentence modified twice as a result of probation violations (2007 and 2010). Additionally, we agree with the State that Allen's disturbing character is vividly revealed by his own recorded words.

[36] In sum, we conclude that the nineteen-year sentence imposed by the trial court is not inappropriate in light of Allen's character and the nature of the offenses.

[37] Judgment affirmed.

[38] Riley, J. and Crone, J., concur.